E-FILED
Monday, 02 May, 2011 04:30:27 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TONY PIATT, | ) |
|                 **Plaintiff,** | ) |
|    v. | ) Case No. 10-CV-2051 |
| JOSEPH S. EISENHAUER, LARRY THOMASON, DOUG MILLER and BOB RICHARD, | ) |
|                 **Defendants.** | ) |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#10) filed by Defendants Joseph S. Eisenhauer, Larry Thomason, Doug Miller and Bob Richard. This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, Defendants' Motion for Summary Judgment (#17) is GRANTED.

## FACTS[1]

Plaintiff is Caucasian and was hired by the City of Danville Police Department (Department) as a police officer in 1995. On March 8, 2008, at approximately 2:00 a.m., Plaintiff was involved in a confrontation at a Steak and Shake restaurant in Danville. Plaintiff was off duty that day, was dressed in plainclothes, and had no badge with him. Earlier in the evening, Plaintiff had been at Monical's and then went to Snapper's Turtle Run Restaurant, arriving there about 8:00 p.m. Plaintiff was at Snapper's about four hours and drank four or five 12 ounce Bud Light beers.

---

[1] The facts are taken from the parties' statements of undisputed facts and the documents submitted by the parties, including the transcripts of deposition testimony. This court notes that Plaintiff did not dispute any of the facts listed by Defendants. This court therefore accepts those facts as material and undisputed pursuant to Rule 7.1(D)(2) of the Local Rules of the Central District of Illinois. As far as the additional undisputed facts listed by Plaintiff, this court has only included facts which are material to the issues in this case and supported by the record.

Plaintiff then went to a bar, Sarge's Tap, where he met his wife and friends. Plaintiff drank half of a 12 ounce Bud Light.

Around 2:00 a.m., Plaintiff drove to the Steak and Shake with his wife. His friends Sean and Kayla O'Kane drove there also. Plaintiff was at Steak and Shake about 30 minutes when four African American individuals, two men and two women, came in and sat down. Plaintiff recognized the two men as persons he had dealt with previously as a Danville police officer, including an incident about six months earlier when he used a taser on both of them during a fight outside a Danville bar. Plaintiff testified that he felt the two men knew who he was. Neither Plaintiff nor anyone he was with had any interaction with the four African American individuals. Plaintiff's party got up to leave, and Plaintiff paid their check. They went outside and, when Plaintiff looked back in the restaurant window, he saw one of the African American men blowing kisses towards his wife and shaking his fist at Plaintiff.[2] Plaintiff later learned that the man who was gesturing was Willie Thomas and the man he was with was Benny Rhodes.

Plaintiff went back into the Steak and Shake, approached Thomas and told him to "knock it off." Thomas denied he was doing anything and he and Plaintiff argued. Rhodes then spoke up and Plaintiff told him to "stay out of this." Plaintiff testified that the situation was getting "a little heated" and loud. Plaintiff asked his friend Sean O'Kane to call 911. Plaintiff testified that Rhodes told him, "man, I don't care who you are. We will take you out." Plaintiff testified that he perceived Rhodes' comments as a threat. Plaintiff then pulled his off duty weapon and pointed it

---

[2] Defendants did not dispute this statement which was included in Plaintiff's statement of additional undisputed facts. However, the page of Plaintiff's deposition cited by Plaintiff does not include such testimony. Plaintiff actually testified that Thomas was making gestures with his fist and explained that Thomas was "[t]aking his fist and putting it into the middle of his hand" and then "taking his hand and blowing kisses."

2

at Rhodes. Plaintiff's off duty weapon is a Smith and Wesson .38 revolver and it was loaded. It is a "double action" gun which means you pull the trigger and it fires. It has no safety. Plaintiff's revolver was concealed on him until he pulled it out and pointed it at Rhodes. Plaintiff testified that the muzzle of his gun was pointed at Rhodes' head from about 18 inches away. Plaintiff's gun was pointed at Rhodes' head for about 15 seconds. Plaintiff then put it back in the holster. Plaintiff testified that Rhodes got up, pushed him in the chest area and headed "towards the restroom."

Plaintiff testified that he did not see Rhodes or Thomas with a weapon of any kind and has received no information that either of them had a weapon. Danville police officers arrived at the Steak and Shake and Rhodes was handcuffed. While Plaintiff was being interviewed by Danville police Sergeant Rhonda Swisher, he said to her to just let Rhodes and Thomas go. Rhodes and Thomas were not charged with any crime.

A Steak and Shake surveillance camera produced a video which shows what happened in the confrontation. On March 8, 2008, the same day as the incident occurred, Defendant Larry Thomason, Public Safety Director for the City of Danville, put Plaintiff on paid administrative leave while a criminal investigation regarding Plaintiff's actions was conducted by the Vermilion County Sheriff's Office. A few weeks later, when the Sheriff's investigation was concluded, Thomason told Plaintiff he was not going to be charged criminally. Plaintiff was reinstated and came back to work. Plaintiff testified that Thomason told him "[w]e are not doing anything." Thomason testified, however, that he waited until the Sheriff's investigation was concluded before starting an internal investigation. On March 26, 2008, Thomason requested an internal affairs investigation regarding Plaintiff's conduct in the incident to determine whether any department rules and procedures were violated. Plaintiff testified that, a few days after he returned to work, he responded to a call at the

3

YMCA. While he was there, a woman named Emily Stonewall told him he was a racist and should be fired.

Defendants Doug Miller and Bob Richard, who were both Deputy Directors in the Danville police department, were involved in the internal affairs investigation. Miller testified that he had a very limited role. As a result of the internal affairs investigation, Plaintiff's employment was terminated based on the incident at the Steak and Shake. On April 2, 2008, Plaintiff received a memorandum from Thomason advising him that he was being placed on paid administrative leave "effective with the receipt of this memorandum." On May 1, 2008, Defendant Joseph S. Eisenhauer, the Mayor of Danville, filed charges against Plaintiff seeking the termination of his employment. Thomason testified that he recommended termination, but the decision to terminate Plaintiff's employment was made by Mayor Eisenhauer. Eisenhauer testified that he believed that the incident at the Steak and Shake warranted termination.

Plaintiff filed a grievance and an arbitration hearing was held. Following the hearing, the arbitrator found that, prior to this incident, Plaintiff had "generated a record of very good service." However, the arbitrator also found that Plaintiff "had no justification for drawing his weapon and pointing it at Rhodes" and found that the City had just cause to terminate Plaintiff's employment. The arbitrator stated, "[n]o police department can afford to employ a sworn officer who behaves in this manner. Police officers are employed to protect the public, not threaten to kill them over petty slights." Plaintiff was then terminated, effective March 19, 2009, the date of the arbitrator's decision. Plaintiff appealed the arbitrator's decision to the Illinois circuit court, which upheld the decision on September 8, 2010.

PROCEDURAL HISTORY

On March 5, 2010, Plaintiff filed a Complaint (#1) against Defendants. Plaintiff stated that his claims were brought pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983 and alleged that he was denied equal protection under the Fourteenth Amendment because of his race. Plaintiff specifically alleged that he was discriminated against and was fired to placate the concerns of the African American citizens in Danville. Plaintiff alleged that Defendants "would not have pushed for [Plaintiff's] termination had it not been for [Plaintiff's] race." Defendants filed their Answer (#5) on May 5, 2010.

Plaintiff's deposition was taken as part of discovery in this case on September 17, 2010. Plaintiff testified that he believes Defendants' discrimination against him is shown by (1) comments critical of Plaintiff by African American and Caucasian council members at a Danville city council meeting; (2) articles and letters critical of Plaintiff published in a local newspaper; and (3) the comments of Emily Stonewall. Plaintiff also testified that, during the 1990's an African American officer pulled a weapon on his girlfriend but was not disciplined. Plaintiff testified that, other than the claimed 1990's incident, he did not know of another situation where an African American officer was disciplined differently than he was. At the time of the 1990's incident, Eisenhauer was not the mayor and Thomason was not the Public Safety Director. Plaintiff testified that he did not know if Defendants Doug Miller and Bob Richard were involved in that incident. Plaintiff testified that he received nothing from the Department saying that his employment was terminated because of his race and that none of the Defendants have ever made comments to him that his employment was terminated because of his race.

On January 31, 2011, Defendants filed a Motion for Summary Judgment (#10) and

supporting exhibits (#11). On March 11, 2011, Plaintiff filed his Memorandum of Law in Opposition to Summary Judgment (#14) with attached exhibits. On March 23, 2011, Defendants filed their Reply (#15).

ANALYSIS

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Singer v. Raemisch, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing inferences which are only supported by speculation or conjecture. See Singer, 593 F.3d at 533. In addition, this court "need not accept as true a plaintiff's *characterization* of the facts or a plaintiff's legal conclusion." Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258, 688 F. Supp. 2d 815, 835 (C.D. 2010) (emphasis in original).

The party opposing summary judgment may not rely on the allegations contained in the pleadings. Waldridge, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what

6

evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23.[3]

PLAINTIFF'S DISCRIMINATION CLAIM

In his Complaint (#1), Plaintiff stated that his action was brought under 42 U.S.C. § 1981 and § 1983 and alleged that he was discriminated against on the basis of his race. A prima facie case of race discrimination under 42 U.S.C. § 1981 is predicated on the same elements as a race discrimination claim under Title VII. Lalvani v. Cook County, Ill., 269 F.3d 785, 789 (7th Cir. 2001). In addition, the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection. Williams v. Seniff, 342 F.3d 774, 788 n. 13 (7th Cir. 2003). Under Title VII (and therefore, under § 1981 and § 1983 as well), a plaintiff may meet his burden by using either

---

[3] This court notes that much of the argument in Plaintiff's Memorandum of Law in Opposition to Summary Judgment (#14) consists of an attack on the current state of the law regarding motions for summary judgment. Defendants have correctly pointed out that, of 11 pages of discussion of legal issues, only 2 ½ pages have anything to do with the facts of this case. A section of the argument is entitled "Summary Judgment Standards have Become Abusive to Plaintiffs in Employment Discrimination and Retaliation Claims." Plaintiff's argument in this section ends with the statement that "[t]he seemingly instinctive trend of granting judgment in employment cases must be reversed" and appears to be a request that this court reject the standards set out by the United States Supreme Court and the Seventh Circuit regarding motions for summary judgment. This court must, however, follow the decisions of the United States Supreme Court and the Seventh Circuit. "In a hierarchical system, decisions of a superior court are authoritative on inferior courts." Reiser v. Residential Funding Corp. 380 F.3d 1027, 1029 (7th Cir. 2004); see also Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005). Therefore, this court must follow those decisions whether or not it agrees. See Reiser, 380 F.3d at 1029. This court believes that Defendants have a good point in arguing that "Plaintiff's discussion of what he feels case law in this area used to be, or what he wishes the current law was, only underscores the fact that neither the law nor the facts of this case support Plaintiff's claim and that summary judgment for Defendants is appropriate."

the direct method or indirect method of proof. See Jones v. City of Springfield, Ill., 554 F.3d 669, 671 (7th Cir. 2009). "Under the direct method of proof, a plaintiff can survive summary judgment by showing sufficient evidence, whether it is labeled direct or circumstantial, on which a jury could find that the adverse employment action in question was taken for a discriminatory reason." Jones, 554 F.3d at 671. "Under the direct method, the plaintiff has the burden of proving discrimination." Jones, 554 F.3d at 672.

Under the indirect method of proof, developed by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff must first demonstrate facts that show a prima facie case of discrimination. Phelan v. City of Chicago, 347 F.3d 679, 684 (7th Cir. 2003). In order to survive summary judgment under this method, a plaintiff must show that: (1) he was a member of a protected class; (2) he was meeting the employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably. See Gates v. Caterpillar, Inc., 513 F.3d 680, 690 (7th Cir. 2008), citing McDonnell Douglas, 411 U.S. at 802. Because Plaintiff is alleging reverse discrimination, that is, discrimination against him as a white male, the first prong of the McDonnell Douglas test cannot be used. Phelan, 347 F.3d at 684, citing Mills v. Health Care Serv. Corp., 171 F.3d 450, 455-57 (7th Cir. 1999). In its stead, a plaintiff must show "background circumstances" that demonstrate that a particular employer has "reason or inclination to discriminate invidiously against whites" or evidence that "there is something 'fishy' about the facts at hand." Phelan, 347 F.3d at 684, quoting Mills, 171 F.3d at 455. In other words, a plaintiff must show background circumstances which would support an inference that the defendant is one of those unusual employers who discriminates against the majority. See Mills, 171 F.3d at 455.

8

In their Motion for Summary Judgment, Defendants argued that they are entitled to summary judgment on Plaintiff's claim because there is no evidence to support a claim of the denial of equal protection. Defendants pointed out that Plaintiff is Caucasian and all four Defendants are Caucasian. Defendants argued that the evidence shows that Plaintiff was terminated from his employment because of his actions late one night at a local restaurant, specifically pulling out his weapon and aiming it at a customer's head. Defendants argued that Plaintiff's firing resulted from his own inappropriate conduct which violated the rules and procedures of the Danville Police Department. Defendants also argued that they are entitled to summary judgment on Plaintiff's equal protection claim because Plaintiff failed to identify a similarly situated person who was treated more favorably than Plaintiff. In addition, Defendants argued that they are entitled to qualified immunity.

In his Response, Plaintiff noted that he agreed that summary judgment should be granted to Defendant Miller. He then argued that he does not need to point to a similarly situated employee who was treated differently because he is not proceeding under the indirect burden shifting method set out in McDonnell Douglas. Thus, Plaintiff concedes that he cannot make out a prima facie case under McDonnell Douglas. Plaintiff argued, however, that there is circumstantial evidence of discrimination sufficient to avoid summary judgment. Plaintiff argued that the timing of events suggests that there was no intention to discipline him until the African American community got involved in the issue. Plaintiff argued that their involvement included telephone calls, appearances at city council meetings and articles in the newspaper. Plaintiff argued that a jury could conclude that if he had been African American, the African American community would not have been pushing for his ouster and he would not have been terminated by Defendants. Plaintiff also argued that Defendants did not conduct a thorough investigation.

Circumstantial evidence of discrimination allows the trier of fact to infer "to *infer* intentional discrimination by the decisionmaker." Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712, 720 (7th Cir. 2005) (emphasis in original), quoting Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003). The Seventh Circuit has recognized that "circumstantial" evidence of intentional discrimination includes "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Rudin, 420 F.3d at 720-21, quoting Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). The Seventh Circuit has also recognized, however, that suspicious timing, standing alone, is rarely sufficient to create a triable issue. Argyropoulos v. City of Alton, 539 F.3d 724, 734 (7th Cir. 2008); see also Leonard v. E. Ill. Univ., 606 F.3d 428, 432-33 (7th Cir. 2010).

The facts of this case show that Plaintiff engaged in extremely inappropriate, dangerous conduct on March 8, 2008. He was placed on paid administrative leave while the Vermilion County Sheriff's Office conducted an investigation of the incident. When that investigation was completed about two weeks later, Plaintiff was briefly returned to work and an internal affairs investigation was commenced on March 26, 2008. On April 2, 2008, Plaintiff was again placed on paid administrative leave. Following the internal affairs investigation, Mayor Eisenhauer made the decision to terminate Plaintiff's employment. Eisenhauer testified that he believed that the incident at the Steak and Shake warranted termination. In fact, Plaintiff has not disputed Defendants' statement that his employment was terminated as a result of the internal affairs investigation "because of this incident." Following an arbitration hearing, the arbitrator concluded that there was just cause for the termination of Plaintiff's employment. The arbitrator stated, "[n]o police department can afford to

employ a sworn officer who behaves in this manner. Police officers are employed to protect the public, not threaten to kill them over petty slights."

Plaintiff contends that the decision to terminate his employment was made because of the outcry from the African American community. He argues that he would not have been terminated if he was African American. This court concludes that Plaintiff has provided this court with no evidence to support this speculative argument. First of all, Plaintiff did not dispute that his employment was terminated as a result of the internal affairs investigation. In addition, the fact that there was a public reaction to this incident is understandable and does not mean that Defendants could not make the decision to impose appropriate discipline. Stated simply, the record firmly supports the conclusion that the decision to terminate Plaintiff's employment was justified based upon Plaintiff's conduct. Plaintiff has produced nothing but speculation to support his argument that he would not have been terminated if he was African American. See Jones, 554 F.3d at 672 (Plaintiff failed to provide evidence to support his argument that he would have been promoted if he was black).

Plaintiff has also argued that Defendants' failure to thoroughly investigate the incident "could lead a jury to conclude that the Defendants were trying to quickly push through [Plaintiff's] termination to appease the African American community." This court does not agree. Plaintiff cannot complain that Defendants did not conduct an adequate inquiry into his actions when there is no real dispute regarding those actions. Plaintiff testified at the deposition taken in this case that he pulled out his loaded .38 revolver and pointed it at Rhodes' head. Plaintiff testified that the muzzle of the revolver was about 18 inches from Rhodes' head. The evidence shows that Plaintiff was disciplined for conduct in which he admittedly engaged. Moreover, the arbitrator thoroughly

discussed this issue and found that the Department conducted "an adequate investigation into this matter."

This court concludes that Plaintiff has made no showing that there is a genuine dispute of material fact regarding whether his employment was terminated based upon discrimination on the basis of his race. Plaintiff has provided no evidence, circumstantial or otherwise, that any of the Defendants engaged in discrimination based upon his race. All of the Defendants are entitled to summary judgment on Plaintiff's claim.[4]

IT IS THEREFORE ORDERED THAT:

(1) The Motion for Summary Judgment [10] filed by Defendants Joseph S. Eisenhauer, Larry Thomason, Doug Miller and Bob Richard is GRANTED. Judgment is entered in favor of Defendants and against Plaintiff on Plaintiff's Complaint [1].

(2) The final pretrial conference scheduled for May 26, 2011, at 3:30 p.m. and the jury trial scheduled for June 6, 2011, at 9:00 a.m. are hereby VACATED.

(3) This case is terminated.

ENTERED this 2nd day of May 2011, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE

---

[4] Because of this conclusion, this court does not need to consider Defendants' argument that they are entitled to qualified immunity.